TEODORO FAJARDO CABASSA, ETC., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE SAN GERMÁN, recurrido.

*Número:* O-68-123    *Resuelto:* 30 de diciembre de 1969

*Carlos García Méndez* y *Andrés Guillermard Fajardo,* abogados del recurrente; el Registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

En 28 de junio de 1965 se presentó en la Sección de San Germán del Registro de la Propiedad, copia certificada de la escritura de arrendamiento número 203 otorgada el día 10 de junio de 1959 ante el notario Carlos García Méndez. El Registrador suspendió la inscripción de dicha escritura y la devolvió al presentante, mediante la siguiente nota:

"Devuelto este documento y suspendida la inscripción del mismo porque no se acreditan las facultades de Ulpiano Colom para comparecer a nombre de los arrendatarios que componen la Comunidad Mateo Fajardo Cardona ni las de Luis V. Valiente para comparecer a nombre de su esposa Carmen Roger, extendiéndose en su lugar nota de suspensión por 60 días al margen del asiento de presentación número 599 al folio 300 del Tomo 221 del Diario, según lo dispone la Ley No. 73 del 23 de junio de 1958. San Germán, a 8 de marzo de 1966. Derechos $0.50 cancelados en un sello. Ley #67 de 1963. (Firmado) Juan Juan Toro, Registrador. Conforme recibí el documento y fuí notificado de la nota de suspensión anterior, hoy 17 de marzo de 1966. (Firmado) Antonio Seda, presentante." (Pág. 3 Alegato del Recurrente.)

No conformes los recurrentes interpusieron el recurso gubernativo que lleva el número G-66-3 de este Tribunal. En 24 de junio de 1966 dictamos sentencia en dicho recurso,

revocando la nota recurrida y ordenamos la inscripción solicitada.

En 28 de noviembre de 1966 se presentó de nuevo en el Registro para su inscripción la misma escritura número 203 de conformidad con la sentencia que dictamos en el recurso G-66-3.

En 19 de abril de 1968 el Registrador denegó su inscripción mediante la siguiente nota:

"DENEGADA la inscripción del documento que precede por observarse que los arrendadores Carmen Roger de Valiente, Héctor Fajardo Roger y Wilda Fajardo de Córdova resultan ser también arrendatarios por haberse así hecho constar en el mismo al relacionarlos como formando parte de la Comunidad Sucesión Mateo Fajardo Cardona, y observarse además que como parte de dicha Comunidad se señala a la Sucesión de Bertha Frances, cuya Sucesión no tiene personalidad jurídica y no comparecen ni se expresa en la escritura quienes componen dicha Sucesión; y observarse también que en el documento se expresa que de la finca letra 'A' se practicó una segregación de cincuenta céntimos de cuerda la cual no consta inscrita y no se acredita que la misma hubiera sido aprobada por la Junta de Planificación de Puerto Rico, por lo que en su lugar se toma la correspondiente anotación preventiva por el término legal a favor de los arrendatarios, allí donde se indica al margen de la descripción de cada una de las fincas, limitada la anotación de la finca letra B a la cabida con que resulta la misma del Registro después de su mensura y de la segregación de 3.40 cuerdas practicada de ella, verificándose las anotaciones con los defectos subsanables de no acreditarse las facultades de Luis V. Valiente para comparecer a nombre de su esposa Carmen Roger, ni las de Ulpiano Colom para hacerlo a nombre de la citada Comunidad Sucesión Mateo Fajardo Cardona. Todas las fincas se hallan además gravadas con un contrato de arrendamiento a favor de Carmen Roger Suau de Valiente y su esposo Luis V. Valiente sobre los condominios pertenecientes a Héctor y Wilda Fajardo, y además así: La letra A, arrendamiento a favor de José Nazario; arrendamiento a favor de South Porto Rico Sugar Company of Puerto Rico, y por su procedencia con contratos de arrendamientos a favor de Bernal

Estate y South Porto Rico Sugar Company; la letra D, servidumbre de paso a perpetuidad a favor de South Porto Rico Sugar Company of Puerto Rico, y en unión de la finca letra E, con hipoteca a favor de The Federal Land Bank of Baltimore por $20,000. San Germán, a 19 de abril de 1968."

"Fuí notificado de la nota denegatoria que precede hoy, 24 de abril de 1968. (Firmado) P. Rampolla"

No conformes los recurrentes han interpuesto este nuevo recurso gubernativo.

En su segunda nota denegando la inscripción de la susodicha escritura número 203, el Sr. Registrador aduce motivos distintos a los consignados en la primera nota suspendiendo la inscripción y la cual fuera revocada por este Tribunal.

Es doctrina sentada por este Tribunal que no tiene facultades un registrador de la propiedad para denegar por segunda vez la inscripción de una escritura por fundamentos distintos de los consignados en la primera nota por ser obligación de los registradores reunir en una sola nota todos los motivos legales de su negativa y que revocada la primera nota y ordenada la inscripción del documento, las facultades del registrador quedan limitadas a practicar las operaciones necesarias para llevarla a cabo. *Roig* v. *Registrador*, 18 D.P.R. 11 (1912); *Guánica Centrale* v. *Registrador*, 23 D.P.R. 734 (1916); *Echevarría, et al.* v. *El Registrador*, 24 D.P.R. 87 (1916).

Empero, el registrador sostiene en este caso que en su primera nota no calificó el documento sino que se limitó a suspender la inscripción y devolver el documento por faltar otros documentos complementarios y necesarios para una completa calificación.

Un planteamiento similar fue resuelto en contra del registrador en el caso de *Guánica Centrale* v. *Registrador*, supra. Allí el registrador puso al pie de unos contratos agrícolas una nota no admitiendo la anotación porque no

se había cancelado el impuesto de un dólar en el documento original y porque no se consignó en el registro otro sello de cincuenta centavos para la anotación que se pedía. Dijo este Tribunal a la pág. 735: "Está equivocado el registrador recurrido en la anterior apreciación porque el documento no fue devuelto sin calificar sino que por el contrario fue calificado por cuanto el registrador expuso en su nota que no admitía la anotación del documento por los motivos que en ella consignó, y una nota de un registrador que niega o no admite la inscripción o anotación que se le pide de un documento expresando las razones que tiene para ello es claramente una calificación del documento."

Sostiene además el registrador que los casos arriba citados fueron resueltos antes de enmendarse el Art. 19 de la Ley Hipotecaria por la Ley Núm. 73 de 1958 y que esta enmienda "que autoriza la suspensión de documentos, no impide que el Registrador, al serle presentado nuevamente el documento, lo califique íntegramente, procediendo a señalar todos los defectos de que pueda adolecer."

Opinamos que no tiene razón. El Art. 19 de la Ley Hipotecaria antes de ser enmendado por la citada ley de 1958, disponía:

"Cuando el registrador notare alguna falta referente a la legalidad de las escrituras que se presenten o de capacidad de los otorgantes lo comunicará por escrito al presentante o al notario que hubiere autorizado el documento para que lo recojan y subsanen la falta en el término que dure los efectos del asiento de presentación o cuando menos dentro de los cinco días después de hecha la notificación, pudiendo el notario o el presentante dejar de recoger el documento cuando para subsanar la falta sólo fuere necesario acompañar otro a los antecedentes correspondientes. De no subsanarse la falta en el término indicado, el registrador denegará la inscripción si se tratara de defecto insubsanable o hará constar el defecto si fuere subsanable; *Disponiéndose,* que la notificación al presentante del documento o al notario se hará constar al margen del

asiento de presentación." (Estatutos Revisados de 1941, pág. 830.)

De conformidad con las disposiciones de ese artículo el notario o el presentante del documento no venía obligado a recogerlo cuando para subsanar la falta señalada por el registrador sólo era necesario acompañar otro a los antecedentes correspondientes.

El citado Art. 19 según fue enmendado en 1958, en lo pertinente dispone:

"§ 44. Aviso de defecto; retiro para efectuar corrección

"Cuando el registrador notare alguna falta referente a la legalidad de las escrituras que se presenten o a la capacidad de los otorgantes, lo comunicará por escrito al presentante o al interesado en la operación registral o al notario que hubiere autorizado el documento, para que lo recojan y subsanen la falta en el término que dure los efectos del asiento de presentación o, cuando menos, dentro de los cinco días después de hecha la notificación. De no subsanarse la falta en el término indicado, el registrador denegará la inscripción si se tratare de defecto insubsanable o hará constar el defecto si fuere subsanable. Si el defecto insubsanable consistiese únicamente en la falta de acompañar algún documento complementario indispensable para la inscripción, anotación o cancelación, el registrador requerirá a las mismas personas y dentro del mismo término indicado, para que acompañen tales documentos complementarios, y, si éstas no lo hicieren, el registrador podrá denegar la inscripción, anotación o cancelación de acuerdo con el procedimiento establecido por ley, o suspenderla por medio de nota fundada que extenderá al margen del asiento de presentación, la cual durará sesenta días, y de ella podrá recurrirse para ante el Tribunal Supremo utilizando el remedio establecido en la Ley sobre Recursos contra las Resoluciones de los Registradores de la Propiedad, secs. 1771 *et seq.* de este título; Disponiéndose, que la notificación al presentante del documento o al interesado en la operación registral o al notario se hará constar al margen del asiento de presentación; . . . ." (30 L.P.R.A. sec. 44.)

De acuerdo con esa enmienda tampoco viene obligado el presentante, el interesado en la operación registral o el no-

tario autorizante a recoger el documento presentado si el defecto consiste en la falta de acompañar documentos complementarios. Si el defecto insubsanable consiste *únicamente* en la falta de acompañar algún documento complementario indispensable para la inscripción, anotación o cancelación, el registrador requiere a las personas ya mencionadas para que acompañen tales documentos complementarios y si no lo hacen dentro del término de ley, el registrador puede denegar la inscripción, cancelación o anotación o suspenderla por medio de nota fundada.

■ Este requerimiento que hace el registrador para que se acompañen los documentos complementarios solamente procede cuando el defecto insubsanable consista *únicamente* de la falta de tales documentos. Pero si el defecto insubsanable no consistiese únicamente en la falta de los documentos complementarios porque el registrador notare otra faltas, es su deber entonces hacer la notificación correspondiente a las personas interesadas que señala la ley para que recojan el documento y subsanen las faltas. Debe pues el registrador calificar íntegramente el documento al ser presentado y proceder a la notificación correspondiente si notare alguna falta referente a la legalidad de las escrituras o la capacidad de los otorgantes siempre que el defecto insubsanable no consista únicamente en la falta de documentos complementarios pues en este caso, lo que procede es el requerimiento para que se acompañen dichos documentos.

■ De suerte que la doctrina sentada por este Tribunal interpretando el Art. 19 de la Ley Hipotecaria referente a la obligación del registrador de hacer una calificación íntegra del documento en su primera nota, tiene vigencia después de la enmienda del 1958.

Habiéndose excedido el registrador en sus facultades al calificar de nuevo la escritura número 203 señalando faltas

distintas a las consignadas en su primera nota de suspensión de la inscripción, *se revocará la nota recurrida.*

El Juez Presidente Señor Negrón Fernández, no intervino.