HUMBERTO ZAYAS CHARDÓN, demandante y recurrente, *v.* REXACH CONSTRUCTION CO., INC., demandada y recurrida.

*Número:* R-71-142      *Resuelto:* 31 de diciembre de 1974

*Charles R. Cuprill,* abogado del recurrente; *McConnell, Valdés, Kelley, Sifre, Griggs & Ruiz Suria,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

El Código Civil tiene maneras de regular el poder dispositivo de un padre sobre bienes de sus hijos menores exigiendo por regla general la previa autorización judicial y en otras ocasiones remitiendo la conveniencia e interés del menor al celo y buen juicio del padre de familia. Prohíbe a éste actos de enajenación directa o implícita, pero le reserva cierta latitud en el campo de la administración y de este modo el Código crea dos esferas visibles, a veces sobrextendidas y entrelazadas, de enajenación y de administración.

■ El ejercicio de la patria potestad no autoriza al padre ni a la madre para enajenar o gravar bienes inmuebles de clase alguna, o muebles cuyo valor exceda de $2,000, pertenecientes al hijo, y que estén bajo la administración de aquellos,

sin previa autorización de la sala del Tribunal Superior del lugar en que los bienes radiquen, previa comprobación de la necesidad o utilidad de la enajenación o el gravamen, y de acuerdo con lo dispuesto en la ley referente a procedimientos legales especiales. (Art. 159.) El Código atempera el rigor de la prohibición como en el caso reglado por el Art. 1013 (31 L.P.R.A. sec. 2879) en que tratándose de menores sometidos a la patria potestad y representados en la partición por el padre y en su caso por la madre, no será necesaria la intervención ni la aprobación judicial, siempre y cuando que no exista el interés opuesto previsto en el Art. 160 del Código Civil (31 L.P.R.A. sec. 617).

■ También se dispensa el requisito de previa aprobación judicial en el sistema doctrinal integrado por el art. 154 del Código Civil que confiere la administración de los bienes de los hijos que estén bajo la patria potestad en primer término al padre y en ausencia o impedimento legal o muerte de éste a la madre; el Art. 155 (31 L.P.R.A. sec. 612) que declara: "Los bienes que el hijo no emancipado haya adquirido o adquiera con su trabajo o industria, o por cualquier título lucrativo, pertenecen al hijo en propiedad, y en usufructo a los padres que le tengan en su potestad y compañía; pero si el hijo, con consentimiento de sus padres, viviere independientemente de éstos, se le reputará para todos los efectos relativos a dichos bienes, como emancipado, y tendrá en ellos el dominio, el usufructo y la administración"; y el Art. 406 (31 L.P.R.A. sec. 1517) que a su vez dispone que ". . . en el usufructo legal podrá el usufructuario explotar las minas [1] existentes en los predios, haciendo suyas la mitad de las utilidades que resulten, después de

---

[1] La voz "minas" se usa por los tratadistas por extensión analógica para incluir "canteras" y "turberas". El vocablo "turba" aparte de la difundida acepción en nuestro vernáculo, es el nombre de un combustible fósil formado de residuos vegetales acumulados en sitios pantanosos de color pardo oscuro, aspecto terroso y poco peso que al arder produce humo denso.

rebajar los gastos, que satisfará por mitad con el propietario. Exceptúase el caso de que, en el usufructo del cónyuge viudo, se descubran yacimientos mineros en un predio, después que haya sido asignado para satisfacer la cuota usufructuaria. Cuando eso suceda, los herederos podrán proceder a una nueva asignación de bienes, a fin de que la cuota usufructuaria sea satisfecha en la proporción legal."

En este esquema del Código la gestión del padre usufructuario está restringido por condiciones específicas, como lo son que tenga el hijo en su potestad y viva en su compañía y que las minas o canteras existan, esto es, que estén denunciadas, concedidas o en laboreo al tiempo de comenzar el usufructo. El Art. 410 (31 L.P.R.A. sec. 1521) hace al padre responsable de indemnizar a los hijos propietarios por el deterioro de la cosa imputable a su dolo o negligencia.

El padre, como usufructuario legal, goza de la potestad que Scaevola califica de eminentemente facultativa,(2) de disfrutar por mitad con el nudo propietario, siempre que abone, también por mitad los gastos, las minas(3) denunciadas, concedidas o en beneficio al causarse dicho usufructo.

La aparente extensión de un privilegio al padre como usufructuario legal de los bienes que adquiera su hijo menor no emancipado al amparo del Art. 155 del Código Civil tiene

---

(2) A este criterio, aceptado por todos los comentaristas de relieve, llegó Scaevola en proceso de rectificación, pues antes dictaminó como el juez de instancia que al padre usufructuario legal no podía entregársele la explotación de una mina o cantera porque no siendo el mineral un fruto sino la sustancia del fundo, deberá conservarse en su integridad para el nudo propietario al extinguirse el usufructo. Al retirar su anterior dictamen el ilustre tratadista echó a un lado una sentencia de 7 de mayo de 1879 por el Tribunal Supremo de España y prefiere aplicar lo que llama el criterio de la ley: "juzgo como usufructo la mitad de las utilidades que resulten después de rebajar los gastos, que se satisfarán por mitad con el propietario." Scaevola, *Código Civil*, Tomo 9, págs. 279 y ss., ed. 1948.

(3) En lo que respecta a "minas" diferenciadas de "canteras", este usufructo está hoy afectado por legislación especial. 28 L.P.R.A. secs. 111 y ss.

raíz y explicación en el fomento de la familia como unidad de afecto y de actividad económica que en ambos aspectos se disminuye con la fragmentación del patrimonio durante la minoridad; y en el buen propósito adicional de retribuir al padre que concentra su esfuerzo y sus recursos propios en alimentar, educar y auxiliar a sus hijos menores evitando el desmembramiento de un valor superior inigualable como lo es el hogar con el grupo de familia unido en toda aspiración de bienestar espiritual y material. De lo que resulta que este usufructo no es tanto privilegio sino reconocimiento al buen padre que parte el pan en la mesa con sus hijos y los encauza por sendas de bien y de honor.

Sustentan igual criterio las autoridades: Scaevola: Los usufructos legales ". . . se establecen entre personas íntimamente ligadas con vínculo familiar, marido y esposa, padres e hijos, y se llega sin esfuerzo a la idea de una sociedad o comunidad de ganancias traducida en la coparticipación por mitad de utilidades y de gastos. Estos motivos de afectividad y el pensamiento predominante en la ley al crear los usufructos legales, de compensar obligaciones de naturaleza con disponibilidades ciertas, explica también que en la tendencia de beneficiar los lucros, se hayan valorizado a los efectos perceptivos y en la forma que establece el Art. 477, las minas ya reveladas y denunciadas al constituirse el usufructo." Scaevola, *Código Civil*, To. 9, pág. 283, Quinta ed. (1948); Manresa: "Sobre estos bienes [los propios del hijo conocidos como peculio adventicio, v. gr., la herencia] es preciso reconocer derecho al padre: 1°., en interés del hijo porque nadie los administrará con tanta solicitud que aquel a quien Dios, la Naturaleza y la ley han confiado la misión de velar por todos sus intereses desde los más insignificantes del orden material hasta los más elevados de carácter espiritual; 2°., en concepto de indemnización por los beneficios que al hijo proporciona al suministrarle condiciones para su vida, lo que es un principio económico de indudable justicia";

Manresa, *Comentarios al Código Civil Español*, To. 2, pág. 51, Séptima ed. (1957). Y en sus comentarios a los Arts. del 476 al 478 del Código Civil Español, concordantes con los Arts. 405 al 407 del nuestro (31 L.P.R.A. secs. 1516–1518), añade: "La aplicación de estos preceptos no ofrece dificultad. En el usufructo legal concedido a los padres o al marido, éstos son usufructuarios y administradores. Si, pues, el hijo, por título lucrativo, o la mujer, como dote inestimada, obtienen una finca en la que exista una mina, mina y finca son administradas por el padre o el marido, y sus utilidades son para él y sus hijos o su mujer; todo queda en la familia y no se lesiona derecho alguno." Manresa, *opus cit.*, To. 4, pág. 494, Séptima ed. (1972). Castán identifica como usufructo legal el que "corresponde al padre o madre sobre los bienes de sus hijos no emancipados (Art. 160), aunque, en realidad, está establecido no en beneficio exclusivo del usufructuario, sino en interés de la familia regida por él." Castán Tobeñas, *Derecho Civil Español, Común y Foral*, To. 2, Vol. II, pág. 61, Undécima ed. (1973); Puig Brutau llama usufructo "de disposición" a éste que no obliga a conservar los bienes usufructuados para que, al extinguirse, el propietario los encuentre en forma sustancialmente igual a la que tenían al ser constituido y dice que la rareza de esta figura desaparece si se le relaciona con su finalidad o los intereses a cuyo servicio se halla, pues consiste en un instrumento adaptado a necesidades de tipo familiar. Y termina declarando que "Hay, pues perfecta congruencia en la función que ha de desempeñar esta figura jurídica cuando se faculta al usufructuario a cuyo cargo está la jefatura de una familia para que pueda enajenar en determinadas circunstancias." Puig Brutau, *Fundamentos de Derecho Civil*, To. 3, pág. 363, Primera ed. (1953). Finalmente el Tribunal Supremo de España resuelve que "corresponde al padre, y en su defecto a la madre, el derecho a usufructuar los bienes privativos de sus hijos no emancipados en cuanto ejerzan sobre éstos la patria potestad; y siendo esta potestad, no

la mera condición de padre, el título en virtud del cual se adquiere aquel derecho, claro es que no se ha establecido en provecho personal y exclusivo del usufructuario, sino en beneficio de la familia por él regida y con el fin principal de ayudarle a levantar las cargas inherentes a la patria potestad, entre las cuales se encuentra la de criar, alimentar y educar a su prole; resultando por ello subordinado el goce de aquel derecho al cumplimiento de este deber, cuya subordinación es tanto más evidente cuanto que por el solo objeto de que en todo caso pueda hacerse efectiva anteponiendo el cumplimiento de las obligaciones familiares a las personales del usufructuario, ha declarado el Art. 108 de la Ley Hipotecaria que esta especie de usufructo no es hipotecable." En consideración a tan alto destino declara preferente el derecho de los hijos a percibir alimentos con cargo a los productos de sus propios bienes usufructuados por su madre, en concurrencia con el Banco de España, acreedor personal de la misma. Sentencia de 7 de julio de 1892, según citada por Scaevola, *Código Civil*, To. 3, pág. 556, Quinta ed. (1942).

Considerando la facultad del padre usufructuario legal de una mina cuya explotación conduce a la desmembración de la propiedad y grave erosión de su valor económico, pues la mina no da frutos, da su propia sustancia, surge moderada y sobria la potestad administrativa del padre cuando ejerce su derecho de usufructuario para remover de la finca piedra, tierra y demás productos pétreos que por presentarse en forma más superficial que los minerales, con extensión mucho mayor que éstos, no requieren una técnica complicada de explotación ni alcanza el grado de agotamiento del inmueble inevitable resultado de la operación minera.

■ La parte recurrente en el presente caso es un padre que posee en común proindiviso con cuatro hijos menores de edad varias fincas que constituyen un solo fundo. Suscribió con la corporación recurrida un contrato para extracción de tierra de dichas fincas que habría de utilizarse como relleno.

La recurrida extrajo material por algún tiempo, y luego rehusó continuar la operación por entender que siendo la extracción y venta de tierra para relleno un acto de enajenación y no de administración, la falta de autorización judicial exigida por el Art. 159 del Código Civil (31 L.P.R.A. sec. 616) hace del contrato una nulidad. (⁴) Así también lo entendió el tribunal de instancia, que al no percibir la facultad dispositiva que de la administración de este tipo de usufructo deriva el padre con patria potestad por interacción de los Arts. 154 y 155 y especialmente el 406 del Código Civil, dictó sentencia sumaria desestimando la demanda sobre cumplimiento específico de contrato instada por el padre recurrente.

Incidió el tribunal de instancia pues la regla especial del Art. 406 para el usufructo legal de minas, canteras, turboneras y escoriales en determinadas circunstancias excluye la necesidad de previa autorización judicial dispuesta como regla general para enajenación y gravamen de bienes pertenecientes a menores enunciada por el Art. 159 del Código Civil.

Como el pleito no llegó a juicio en el Tribunal Superior, no disponemos de hechos probados sobre los cuales hacer una adjudicación en orden a la doctrina aquí expuesta, lo que nos obliga a devolver el caso al tribunal de instancia para continuación de procedimientos consistentes con esta opinión.

*La sentencia sumaria será revocada.*

El Juez Asociado, Señor Martín, concurre en el resultado, sin opinión. El Juez Asociado, Señor Dávila, emitió opinión

---

(⁴) Se ha resuelto por el Tribunal Supremo de España que tampoco es necesaria la autorización judicial para la enajenación de bienes en la vía de apremio seguida ante la autoridad judicial, ni para otorgar escritura de retroventa por el padre en nombre de sus hijos menores, ni para la compra de bienes bajo condición impuesta al hijo comprador, por gravosa que sea; para la repudiación de herencia o legados, ni para admitir un nuevo socio en una sociedad mercantil, ni cuando el testador deja a los menores, que no sean sus herederos forzosos, herencia o legado de importancia, dispensando de la obligación de obtener autorización judicial para su venta. Puig Brutau, *Fundamentos de Derecho Civil*, T. IV, Vol. 2, pág. 211, Primera ed. (1970).

disidente. El Juez Asociado, Señor Irizarry Yunqué, no intervino.

—O—

Opinión disidente del Juez Asociado Señor Dávila.

San Juan, Puerto Rico, a 31 de diciembre de 1974

Disiento. No cuestiono la corrección de aquella parte de la opinión que expone la doctrina general sobre el usufructo de los bienes de los hijos. Discrepo, sin embargo, de su aplicación a los hechos de este litigio. En la opinión del Tribunal se expone que "Considerando la facultad del padre usufructuario legal de una mina cuya explotación conduce a la desmembración de la propiedad y grave erosión de su valor económico, pues la mina no da frutos, da su propia sustancia, surge moderada y sobria la potestad administrativa del padre cuando ejerce su derecho de usufructuario para remover de la finca piedra, tierra y demás productos pétreos que por presentarse en forma más superficial que los minerales, con extensión mucho mayor que éstos, no requieren una técnica complicada de explotación ni alcanza el grado de agotamiento del inmueble inevitable resultado de la operación minera."

Una simple lectura de los Arts. 405 y 406 (1) del Código Civil, en los cuales se funda la opinión del Tribunal para sostener la validez de la actuación del usufructuario, para extraer y vender piedra y tierra para relleno, de una finca

---

(1) *Artículo 405*
"No corresponden al usufructuario de los predios que existan minas los productos de las minas, a no ser que expresamente se le concedan en el título constitutivo del usufructo, o que sea universal.

"*Podrá*, sin embargo, el usufructuario extraer piedras, cal y yeso de las canteras para reparaciones u obras que estuviere obligado a hacer, o que fueren necesarias, en la finca usufructuada."
*Artículo 406*
"Sin embargo de lo dispuesto en el artículo anterior, en el usufructo legal podrá el usufructuario explotar las minas existentes en los predios, haciendo suyas la mitad de las utilidades que resulten, después de rebajar los gastos, que satisfará por mitad con el propietario. . . ."

perteneciente a un menor, demostrará que sus disposiciones se circunscriben a establecer los derechos del usufructuario exclusivamente en las minas que pueden existir en el predio usufructuado. No puedo estar de acuerdo con extender la aplicación de lo dispuesto en los mencionados artículos al usufructuario de todo un predio de terreno.

Contrario a lo que se expresa por el Tribunal, remover de una finca piedra y tierra indiscriminadamente puede afectar sustancialmente el valor de ésta, ocasionando que resulte inservible para el mejor uso de acuerdo a su localización. Una parcela de terreno bien localizada, con potencialidades para un desarrollo urbano, puede quedar inservible para este uso, si se extrae de la misma piedra y tierra sin hacer un estudio previo de la topografía y determinar en los sitios que puede extraerse y hasta qué niveles. Igualmente, una finca agrícola puede quedar inservible para este uso si al extraerse la tierra se elimina toda la capa vegetal. La explotación de una mina es diferente, pues posiblemente el único uso que tiene esa porción de la finca donde está ubicada la mina es ése. Es interesante apuntar que se ha criticado la norma establecida por los citados artículos para el usufructo de minas ya que puede ocasionar la destrucción de la cosa objeto del usufructo. Valverde, hace mención a lo dispuesto por el Código Alemán que requiere un plan de explotación previo para evitar la destrucción de las minas. Afirma que "este criterio o solución al problema es muy racional; mediante el plan estudiado por personas competentes puede salvarse la sustancia y no destruirse la cosa objeto del usufructo" pasando entonces a expresar que "nuestro código mantiene un criterio poco fundado . . . ." Valverde, *Tratado de Derecho Civil Español,* Tomo 2, pág. 432 (4ta. ed.). Si éste es el criterio en cuanto a minas, no puedo comprender la sabiduría de la norma establecida por el Tribunal al extenderlo a todo un predio de terreno por interpretación judicial.

Por lo anteriormente expresado es que entiendo que la extracción de tierra de una finca puede, en ciertos casos, constituir un gravamen y que debe acudirse al tribunal para que éste pueda determinar las condiciones bajo las cuales es más conveniente para el menor la extracción del relleno.